Lawrence **HALL** et al., Plaintiffs,

v.

**ST. HELENA PARISH SCHOOL BOARD**
and **J. L. Meadows, Superintendent,**
Defendants.

**Civ. A. No. 1068.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

July 13, 1964.

See also D.C., 197 F.Supp. 649.

A. P. Tureaud, New Orleans, La., Norman C. Amaker, New York City, for plaintiffs.

Jack P. F. Gremillion, Atty. Gen., George M. Ponder, William P. Schuler, Asst. Attys. Gen., Duncap Kemp, Dist. Atty., in and for St. Helena Parish, for defendants.

J. M. Barnett, Denham Springs, La., for Carl Harvin and Catherine Harvin and others, intervenors.

WEST, District Judge.

This school desegregation case is, indeed, as stated by the Fifth Circuit Court of Appeals in its decision of July 9, 1964, an extraordinary case. The inferences and conclusions reached by that Court, and set forth in its opinion, are so extraordinary as to be termed by the press "unique in legal annals." The opinion rendered by that Court on July 9, 1964, grew out of a mandamus suit filed against me, as Judge of the United States District Court for the Eastern District of Louisiana, by petitioners herein. The writ of mandamus was issued as prayed for on July 9, 1964.

Ordinarily, as a result of the issuance of a writ of mandamus, nothing is required of the Court to which the writ is directed but to comply with the orders of the issuing Court. The order of the Fifth Circuit Court of Appeals in this instance will, of course, be scrupulously complied with by this Court. However, in this most unusual case, since the opinion rendered by the Court of Appeals is so injudiciously couched in personal terms, and is so written as to directly, and by clear implication accuse me, personally, of refusing to accept my responsibilities as a Judge of this Court, of wasting precious judicial time, of acting in an "unusual" and "shocking" manner, and even intimating that I have, in some way, acted unethically in the handling of this case, I would be a poor judge indeed, and less than a man, if I were to let such an obvious attack on my personal integrity go unnoticed. Especially is this true when the opinion, as written by the Court of Appeals, is for publication. It is one thing for that Court to question my judgment, but it is quite another for it to question my integrity. Consequently, while I am extremely reluctant to do so, I must of necessity, solely for the completion of the record in this case, make a few brief comments in response to these accusations. Inasmuch as this case will, in all probability, be before the Courts for some time to come, the record, in all fairness, should be complete. And I must say that it is only by the exercise of the restraint so necessary, but so often lacking in the proper performance of judicial functions, that I am deterred from responding in kind. I question the integrity of no one. While I might, in certain instances, disagree with the legal opinions of my brethren of other Courts, I respect their integrity, their judgments and their right

to disagree. I would not think of questioning their sincerity of purpose no matter how wrong I might think their judgment to be.

It is indeed unfortunate that the opinion rendered by the Court of Appeals denouncing me for the procedures which I have used in this desegregation case fails to state accurately some of the important facts which were, or would have been, presented to it had that Court permitted oral argument. It is particularly unfortunate that the decision leaves the impression that I was requested on three different occasions to act on petitioners' request for desegregation of the St. Helena Parish schools, and that on each of these occasions I refused to act. It is particularly unfortunate that the opinion did not affirmatively state, as the facts clearly reflect, that in connection with the first two requests, made in January of 1962, and March of 1963, no action was taken by this Court because of agreements to that effect voluntarily entered into by mutual consent of all parties, including the attorneys for the Negro petitioners. It was felt by all parties concerned, after careful consideration, that it was best to delay this suit pending the completion of desegregation plans in the Baton Rouge area. This fact was before the Court of Appeals and was clearly contained in the response filed by the Attorney General of the State of Louisiana, but no mention of this established fact was made by the Court when denouncing my actions in this case. The third request for relief was filed with this Court on February 26, 1964. The Baton Rouge schools having been successfully and uneventfully desegregated, no agreement to continue was reached between the parties, and consequently, a hearing was held on March 6, 1964, or only nine days after the request was filed. Less than ninety days later, this mandamus suit was filed.

The Court of Appeals, in its opinion, makes much of the fact that I, made a respondent in this mandamus suit, did not personally file a response or answer to this suit. Acting upon the old adage that a lawyer who represents himself has a fool for a client, I immediately called upon the office of the United States Attorney General to represent me in these proceedings, only to the extent of presenting to the Court of Appeals, in an honest, orderly and unbiased fashion, the true facts, and all of the facts leading up to the filing of this mandamus suit. That office had all of the facts either in its possession or accessible to it. This request was promptly refused by the United States Attorney General's office. As a result, the Attorney General of the State of Louisiana graciously offered to allow me to join in and adopt as my own the response prepared and filed by him.

It is unfortunate, and rather surprising, that the procedures used by me in the handling of these delicate civil rights matters which in the past have proved so successful in Baton Rouge and surrounding areas, would be considered "unusual" and "shocking" by the Court of Appeals. It has been said that it is difficult to argue with success, but it is apparently not as difficult to simply ignore it. It would apparently have been less "shocking" had I acted less like a Judge and an Arbitrator and more like a bull in a china shop by ignoring completely the local conditions and circumstances involved, and simply ordering the immediate desegregation of all school facilities in St. Helena Parish without regard to the possible consequences thereof.

The Court of Appeals' opinion carries the obvious implication, if not the direct accusation, that I have somehow acted improperly or unethically in holding certain conferences in connection with this case. Such an inference or conclusion is not only patently unfair, but completely unjustified and totally unsupported by the facts. Even the litigants, including petitioners, have never made such an evil accusation. The Court's opinion further concludes that I have somehow shirked my duty and refused to accept my responsibility. This Court has con-

sistently refused to usurp the powers and prerogatives rightfully belonging to others, but has never shirked its duty or refused to accept its responsibility. Such a conclusion by the Court of Appeals is also patently unfair, unjustified, and unsupported by the facts. The records in this and other cases will clearly show that this Court has always tried conscientiously and scrupulously to abide by the established rules of procedure, the established rules of Court, and the judicial canons of ethics, and to apply those rules impartially and uniformly to all, thus attempting, in every way possible, to promote and preserve the orderly administration of justice. This Court has consistently refused to apply or employ dual standards, one for civil rights cases and another for ordinary litigation. I would respectfully suggest that if the same procedures used by this Court in the past had been used by other Courts in other similar cases, the end results in those cases might well have been an orderly, uneventful, and peaceful transition from a system of segregated public facilities, as has been the case in Baton Rouge, instead of a transition fraught with strife and turmoil as has been the case in many other localities. If, as stated by the Court of Appeals, the "confidence of litigants in our judicial system" is in danger of being destroyed, I dare say that it is being destroyed by sources other than this Court.

I need not defend my actions in this or any other case over which I have presided. My actions and my judgments have been predicated on what I believe to be the law, and have been dictated to me by a clear conscience. It is the prerogative of the Court of Appeals to reverse my judgment. Indeed it is their duty, when indicated, to do so. This they have done in the instant case. It is not, however, their prerogative to attack my personal integrity, nor to impugn my motives. I will stand my ethics, my integrity, my motives, my devotion to duty, and my sincerity of purpose side by side with those of any other

Judge at any time for inspection and comparison.

This response, and these remarks, are made with malice toward none, and with the utmost respect for the judicial opinions and the personal integrity of my brethren on the Court of Appeals. That Court has, in accordance with the authority granted them, issued a mandate to me in this case, which mandate will, as always, be promptly and respectfully obeyed. In accordance with that mandate an order will issue forthwith, directing the respondents in this case to promptly submit a plan of desegregation of the schools under their control in accordance with the express instructions and directions contained in the mandate issued herein by the Fifth Circuit Court of Appeals on July 9, 1964.

## ORDER

Pursuant to the mandate issued to this Court on July 9, 1964, by the United States Court of Appeals for the Fifth Circuit, and in strict accordance therewith, and after having been informed by respondents herein that the 1964 fall term of school commences in St. Helena Parish on August 12, 1964:

It is ordered that not later than July 24, 1964, at 12:00 o'clock noon, the respondents herein or their successors in office, shall submit to this Court a detailed plan for executing an orderly transition of the public schools of the Parish of St. Helena, State of Louisiana, from a racially discriminatory school system to a racially non-discriminatory school system in accordance with the prior judgment and order of this Court dated May 24, 1960, as affirmed by the Court of Appeals, Fifth Circuit, on February 9, 1961, and on which said order and judgment, review by the United States Supreme Court was denied on October 9, 1961.

It is further ordered that, in accordance with said mandate, the plan to be presented to this Court by July 24, 1964, shall contain, as a minimum, a good faith start by the St. Helena Parish School Board, including a plan whereby

two years will be allowed for the desegregation of the tenth, eleventh, and twelfth grades, and three years will be allowed for the desegregation of the seventh, eighth, and ninth grades, or a total of five years for the desegregation of the six grades comprising junior high and high school. The plan must, in accordance with said mandate, provide at the same time for the desegregation of one grade per year, beginning with the first grade of elementary school, and it must require assignment without regard to race as to each pupil new to the system in grades not reached by the plan. The plan shall provide that the dual or bi-racial school attendance system, i. e., separate attendance areas, districts or zones, for the races shall be abolished contemporaneously with the application of the plan to the respective grades when and as reached by it. The plan shall further include provisions for transfer and assignment, to be based only on the choice of school by the pupil and the availability of space in the school chosen, with priority where space for all is not available to be based on proximity of residence to the school chosen.

It is further ordered that the plan must be further implemented by giving timely notice of it by the Superintendent and/or the local School Board to the students, parents, teachers, and other appropriate school personnel. Provisions must be made for such notice to be given and for all applications for transfers received to be acted upon in time to implement the plan at the commencement of the 1964 fall term of school.

It is further ordered that respondents herein, and their successors in office, their agents, servants, representatives, or employees, and all other persons whomsoever acting in concert with any and all of such persons, are hereby permanently enjoined from doing anything calculated to obstruct or interfere with the orderly administration of such plan as may be approved and adopted by this Court for affecting the transition of the schools hereinabove mentioned to a racially non-discriminatory basis.

This Court retains jurisdiction of this case for such further proceedings and for the issuance of such further orders as may be necessary and appropriate herein.